COURT OF APPEALS OF VIRGINIA

Present: Judges Fitzpatrick, Overton and Senior Judge Duff
Argued at Alexandria, Virginia

DENNIS L. CARR

                                              OPINION BY
v.        Record No. 2939-96-4     JUDGE JOHANNA L. FITZPATRICK
                                              JULY 29, 1997
VIRGINIA ELECTRIC & POWER COMPANY


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

           Wesley G. Marshall (Peter M. Sweeny &
           Associates, P.C., on briefs), for appellant.

           Glenn S. Phelps (Ruth Nathanson; Midkiff &
           Hiner, P.C., on brief), for appellee.



        Dennis L. Carr (claimant) appeals a decision of the Workers'

Compensation Commission denying him an award of temporary partial

disability benefits. He contends that the commission erred in

failing to award him benefits for the time periods during which

he performed light duty work but received no opportunities for

overtime. For the reasons that follow, we reverse the decision

of the commission.

                      I.  BACKGROUND

        Claimant was employed with Virginia Power (employer) as a

lineman for approximately twenty-three years. During his

employment as a lineman, claimant's duties included "climb[ing]

poles," "work[ing] out of a bucket truck," trouble shooting,

building lines, and "restor[ing] service customers when they're

out of lights." Claimant typically worked more than forty hours

per week and regularly received overtime compensation.

Additionally, claimant received bonus or incentive pay when he

"filled other shifts" or worked "outside of his department of geographic area." On July 5, 1995, claimant, who is left-handed, suffered a compensable injury resulting in the amputation of his left ring finger.

Subsequently, claimant was paid wages in lieu of compensation for periods of total incapacitation from July 6, 1995 through August 5, 1995, and from September 26, 1995 through October 15, 1995. Claimant performed light duty work from August 6, 1995 through September 25, 1995, and from October 16, 1995 and continuing. Claimant testified that he returned only to light duty work "[b]ecause my doctor says I can't do line work anymore." A letter from one of claimant's doctors states that claimant's injury "precludes him from performing all of his regular duties as an electrician." Claimant's light duty work included the following responsibilities: "some inspection work on [the] equipment, visual, just visual inspections, and . . . read[ing] some meters from time to time." During the light duty work, claimant worked "eight hours a day, 40-hour week." He received, during his light duty work, approximately $114.16 less per week than he received at his pre-injury work.[1] However, during his light duty work, he was neither offered overtime work, nor paid additional wages; nor did he receive any "shift differential."

_____

[1]The commission calculated claimant's pre-injury average weekly wage to be $1,055.37. This amount is $114.16 more per week than claimant's weekly wage for his light duty work.

2

At the hearing on April 12, 1996 before the deputy commissioner, claimant admitted that he sometimes declined or was unavailable to work overtime, that he had been disciplined for having low acceptance rates for overtime, and that he did not know exactly how much overtime he would have been offered. Finally, claimant testified that he knew that overtime had been offered to other linemen during the time period in question, and stated that he would have accepted such an opportunity if it had been offered.

David H. Driggs (Driggs), the construction superintendent, testified that there was no way to predict how much overtime would be available to any given employee from year to year, and that, in the past, claimant failed to maintain the amount of overtime required by the company. However, Driggs also testified that, during the past ten years, overtime had always been offered to linemen.

Following the hearing, the deputy commissioner denied claimant's request for temporary partial disability benefits for the wage loss allegedly resulting from his lack of overtime work, and found that "the reduction in earnings stems from purely economic factors unrelated to the accident. Therefore, the claimant has failed to prove a causal nexus between the accident and his loss of earnings."

On November 4, 1996, the full commission reviewed the record and found that "the claimant was not medically restricted from

3

working overtime and had not proven that his wage loss was due to medical restrictions from the industrial accident." The commission made no finding or classification as to the job title of claimant's light duty position relative to his pre-injury title of lineman. Accordingly, the commission affirmed the decision of the deputy commissioner that denied claimant temporary partial benefits for wages lost due to a lack of overtime work or shift differential.

## II. WAGE LOSS

Claimant contends that because he was offered light duty work without the opportunity to work overtime, shift differential, or out-of-business-area pay, he suffered a wage loss below his pre-injury wage. Additionally, claimant argues that his wage loss is properly attributable to his occupational injury, as medically imposed restrictions prevented him from performing his pre-injury job and receiving extra earnings, and it is therefore compensable under Code § 65.2-502.[2]

---

[2] Code § 65.2-502, Compensation for partial incapacity, provides as follows:

> Except as otherwise provided in § 65.2-503 or § 65.2-510, when the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such incapacity a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than 100 percent of the average weekly wage of the Commonwealth as defined in § 65.2-500. In no case shall

4

We recently addressed the issue of the impact of economic or business conditions on a partially disabled claimant's right to compensation.  See Consolidated Stores Corporation, et al. v. Graham, ___ Va. App. ___, ___ S.E.2d ___ (1997).  In that case, some time after her injury, claimant was authorized to perform light duty work.  She was offered and she accepted a position as a sales clerk in which she made the same hourly wage as her pre-injury position as a "stocker."  However, "[d]ue to economic conditions, [employer] assigned [claimant] a reduced number of hours, resulting in an average weekly wage of less than $108." Consolidated, ___ Va. App. at ___, ___ S.E.2d at ___.  Although the deputy commissioner found that "any diminution in hours worked was a product of the down turn in business," the full commission reversed and found that the claimant had not been "released to her pre-injury job and that she was not performing all her pre-injury duties" and that the "'fact that the availability of light duty work is limited due to economic conditions does not diminish the claimant's right to compensation when the injury prevents her from performing her regular job.'" Id. at ___, ___ S.E.2d at ___.

Finding that claimant was not released to her pre-injury

---

the period covered by such compensation be greater than 500 weeks.  In case the partial incapacity begins after a period of total incapacity, the latter period shall be deducted from the maximum period herein allowed for partial incapacity.

employment and that her light duty responsibilities as a store clerk were not commensurate with her pre-injury position of a stocker, we held that "the employer's financial condition and the availability of alternative work do not affect <u>the claimant's right to compensation due to an impaired capacity to perform his pre-injury duties.</u>"  <u>Id.</u> at ___, ___ S.E.2d at ___ (emphasis added).  In reaching this decision, we relied on Code § 65.2-502:

> During a period of partial incapacity, a claimant performing work remains entitled to compensation benefits, determined in part by calculating the difference between the claimant's average weekly wage before and after the injury.  Thus, by providing suitable alternative employment to a claimant, an employer may avoid paying compensation benefits.

<u>Id.</u>  Accordingly, we held that because claimant was neither released to return to her pre-injury duties, nor restored to her pre-injury capacity by the employer's offered alternative light duty work, the employer remained liable to fulfill its duty to compensate claimant.

The circumstances in <u>Consolidated</u> are remarkably similar to those of the instant case.  Here, employer offered claimant light duty work similar in pay to his pre-injury employment as a lineman.  As in <u>Consolidated</u>, however, claimant suffered a wage loss at the light duty position that he would not have incurred at his pre-injury placement.  "The threshold test for compensability is whether the employee is 'able fully to perform the duties of his pre[-]injury employment.'"  <u>Celanese Fibers Co.</u>

6

v. Johnson, 229 Va. 117, 120, 326 S.E.2d 687, 690 (1985) (quoting Sky Chefs, Inc. v. Rogers, 222 Va. 800, 805, 284 S.E.2d 605, 607 (1981)). Under the holding in Consolidated, the employer is relieved of its duty to compensate the claimant only if it offers the claimant employment in his or her "pre-injury capacity" and the claimant has been released to perform the work. In both Consolidated and this case, the employer failed to make this offer. Claimant, who made at least some overtime in his previous position, now makes none. The evidence demonstrated that other linemen continue to receive overtime and that claimant's range of duties in his light duty work is not equivalent to his pre-injury duties as a lineman. Thus, claimant has not been released to his pre-injury capacity as a lineman. Accordingly, employer's inability to predict the available overtime to the linemen during the period in question does not diminish claimant's right to compensation, as his work-related injury prevents him from performing lineman duties, and employer remains liable for the wage loss suffered by claimant. See also Davey Tree Expert Service Co. v. Acuff, 20 Va. App. 320, 456 S.E.2d 544 (1995) (holding that claimant is entitled to temporary partial disability benefits to compensate him for the loss of his capability to engage in his pre-injury work, where this loss is caused by work-related injury).

For the foregoing reasons, the decision of the commission is reversed and the case remanded for the commission to enter an

7

order consistent with this opinion.

                                        Reversed and remanded.