UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Lorish and White

CITY OF PORTSMOUTH, ET AL.

                                              MEMORANDUM OPINION[*]
v.      Record No. 0735-23-1                          PER CURIAM
                                               JUNE 11, 2024

ROBERT AYERS

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(Audrey Marcello; Ethan W. Smith; Ford Richardson, PC, on brief),
for appellants.

No brief or argument for appellee.

The City of Portsmouth and PMA Management Corp., TPA (collectively, "appellants")

appeal the judgment of the Virginia Workers' Compensation Commission ("the Commission")

that claimant Robert Ayers is entitled to continuing temporary total disability benefits beginning

January 6, 2022. Appellants claim that the evidence was insufficient to support the

Commission's finding that Ayers was totally disabled beginning January 6, 2022. After

examining the brief and record in this case, the panel unanimously holds that oral argument is

unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule

5A:27(a). For the following reasons, we find no error and affirm the Commission's judgment.

BACKGROUND

"On appeal from a decision of the Commission, 'the evidence and all reasonable

inferences that may be drawn from that evidence are viewed in the light most favorable to the

prevailing party below.'" *Jalloh v. Rodgers*, 77 Va. App. 195, 200 n.2 (2023) (quoting *City of*

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

*Charlottesville v. Sclafani*, 70 Va. App. 613, 616 (2019)).  On July 9, 2021, Ayers, a heavy equipment operator employed by the City of Portsmouth, "got hung up on" debris at work while retrieving a tool and fell on his head and arm.  That same day, he received medical attention at I & O Medical Center ("I & O").  A physician's assistant examined Ayers and noted that he had reduced range of motion in his neck, as well as cervical and muscular tenderness.  He also had a nose laceration, superficial abrasions to his forehead and left arm, and a bruised head.  Ayers complained of pain in his head, neck, and left forearm, as well as neck stiffness.  After cleaning and bandaging Ayers's injuries, the physician's assistant recommended that he return the next day for further evaluation.

When Ayers returned to I & O a day later, he complained of muscle pain and soreness in his neck and upper back and continued to exhibit reduced range of motion in his neck.  The medical records indicate that Ayers was diagnosed with "neck strain," was prescribed muscle relaxers, and was instructed to avoid "safety sensitive work."  At a follow-up appointment a few days later, Ayers was further instructed to avoid lifting or pulling anything over ten pounds.  Ayers's neck pain and reduced range of motion persisted.

On July 20, 2021, Ayers saw Dr. Baddar and reported that, in addition to continued pain in his neck and shoulder, he experienced a "compression type of feeling going down his spine" and a "pulling sensation" when turning his neck.  Dr. Baddar increased Ayers's work restrictions further and referred him to physical therapy.  Over the next two weeks, Ayers participated in physical therapy but continued to complain of neck pain and stiffness.  At a follow-up appointment in early August 2021, Ayers reported he had begun experiencing numbness in his right fingers.  Dr. Baddar ordered an MRI of Ayers's cervical spine.  The results of the MRI showed "[m]ultilevel degenerative changes of the spine" and "[m]ultilevel moderate to high-grade neural foraminal

stenosis." The MRI further revealed "[m]ild-to-moderate canal stenosis" at C4-C5 and "moderate canal stenosis" at C5-C6 and C6-C7.

Dr. Baddar opined that the MRI showed "chronic changes" and "no acute changes or surgical lesions," and recommended that Ayers continue physical therapy. On September 10, 2021, Dr. Baddar cleared Ayers to return to full duty at work on September 20. Ayers returned to see Dr. Baddar in October, reporting that he had tried to perform his regular work, but that his neck continued to "hurt bad" and that he experienced pain and numbness running from his shoulder and down his arm to his fingers. Ayers also reported that "his fingers lock[ed] up at times." Dr. Baddar ordered an EMG, but did not place any restrictions on Ayers's work duties.

The EMG showed "chronic ulnar neuropathy at the right elbow" and "chronic right C7 radiculopathy," leading Dr. Baddar to conclude that Ayers's conditions predated his work accident. On November 9, 2021, Dr. Baddar referred Ayers to his primary care provider for further care. In November, Ayers saw his primary care provider, nurse practitioner Lisa Hills. Hills recommended that Ayers see a specialist.

On December 7, 2021, Ayers consulted Dr. Mark Kerner, an orthopedic surgeon. Ayers complained of pain in his neck and right arm, decreased range of motion in his neck, and numbness extending down his arm into his hand. After examining Ayers and reviewing the results of the previously ordered MRI and EMG, Dr. Kerner opined that Ayers suffered from "cervical spinal stenosis" and recommended surgery. In Dr. Kerner's opinion, Ayers's symptoms were "disabling." Dr. Kerner noted that although Ayers had been "treated and released by his compensation provider" for "a worker's compensation injury," he continued to exhibit "ongoing neck pain with decreased range of motion" and "pain . . . in his right arm with numbness and radiating pain into his hand." Further, Dr. Kerner noted that Ayers suffered from "chronic neck pain and radiating arm pain since his injury" and had a "disability with dropping things and ongoing mechanical induced

radiculopathy." Dr. Kerner diagnosed Ayers with "significant cervical foraminal stenosis at C5-7" and "[m]oderate bilateral stenosis at C5-6" and recommended cervical decompression fusion.

On January 6, 2022, Ayers returned to Dr. Kerner reporting that he "continu[ed] to have significant pain" and felt that "he cannot function at work." Ayers wanted to proceed with the recommended surgery. Dr. Kerner wrote a "work/school note" stating that Ayers would be having surgery and should be excused from work until February 16, 2022. Dr. Kerner scheduled Ayers for surgery on February 21, 2022. In early February, Dr. Kerner estimated that Ayers would remain incapacitated until May and stated on Ayers's Family and Medical Leave Act (FMLA) questionnaire that Ayers "will need to remain out of work for full recovery time."

Although Ayers's arm pain and numbness improved after the surgery, he continued to experience neck pain and "[d]ecreased range of motion in his cervical spine." After a follow-up appointment at Dr. Kerner's practice on May 17, 2022, Ayers was referred to physical therapy for "4-6 weeks" and provided with a note excusing him from work until June 28, 2022. On July 8, Dr. Kerner wrote another note stating that Ayers "was seen in our office July 6th" and that he should "remain[] out of work until his follow-up [appointment] which is August 30."

On May 17, 2022, neurologist Dr. Grant Skidmore reviewed Ayers's medical records at appellants' request. Dr. Skidmore opined that, although Ayers "[c]ertainly . . . had the pre-existing degenerative foraminal compromise specifically at 5-6 and 6-7," the fall at work "did cause the onset of [Ayers's] symptoms." Dr. Skidmore reasoned that "[t]he mechanism of injury is consistent with such" and that "there is nothing in the records to indicate that [Ayers] was having any issues . . . until the fall and then he had consistent issues" afterwards. Noting the "failure of the conservative measures" to relieve Ayers's condition, Dr. Skidmore stated that "Dr. Kerner's recommendation for surgery addressing the [two] levels that were affected the most" appeared to be "appropriate."

Ayers filed a claim for benefits seeking continuing temporary total disability benefits beginning on January 4, 2022.[1] Appellants opposed the claim, contending that Ayers was "not disabled or impaired to [the] extent alleged." The case proceeded to an evidentiary hearing before a deputy commissioner on August 10, 2022. At the hearing, Ayers testified that after Dr. Baddar had released him to full duty at work, Ayers "tried to do [his] job" but "couldn't do it" despite his employer letting him "do . . . what [he] could." Ayers described that before he had the surgery, he could "feel nothing" and had "no control" in his right hand. When Ayers tried to hold an object, "a lot of times it would just fall right out of [his] hands." After the surgery, however, "[t]he numbness in [his] arm, all that was gone . . . after a few days." Ayers stated that, at the time of the hearing, he still had "problems with the rotation" of his neck. Although he had "improved some" after the surgery, Ayers believed he still had "a ways to go" to recover. Ayers stated that he continued to participate in physical therapy and to see Dr. Kerner.

On August 15, Deputy Commissioner Ferris issued an opinion awarding Ayers continuing temporary total disability benefits beginning on January 6, 2022. Based on the evidence, including Dr. Skidmore's May 17, 2022 report, the deputy commissioner found that Dr. Kerner took Ayers out of work for "treatment that was reasonable, necessary, and causally related to his work accident," entitling Ayers to medical benefits under Code § 65.2-603. However, the deputy commissioner also found that Ayers "was not referred to Dr. Kerner by his authorized treating physician, he was not confronted with an emergency, and he was not given permission by the

[1] Ayers also sought a lifetime medical award for injuries to his left arm, face, neck, and head as a result of his July 9, 2021 fall; temporary total disability benefits from July 10, 2021, to September 19, 2021; and temporary partial disability benefits from September 20, 2021, to January 3, 2022. The parties stipulated that Ayers injured his left arm, face, and neck as a result of the fall and that he was entitled to temporary total disability benefits from July 10, 2021, to September 19, 2021, and temporary partial disability benefits from December 7, 2021, to January 3, 2022. The parties disputed the compensability of Ayers's head injury, but appellants did not seek review of the deputy commissioner's judgment on this issue by the full Commission.

employer, insurer or the Commission prior to beginning treatment with Dr. Kerner." Ayers therefore did not demonstrate any "other good reasons" that would make the employer and carrier responsible for his treatment by Dr. Kerner. *See Shenandoah Products, Inc. v. Whitlock*, 15 Va. App. 207, 212-13 (1992).

Appellants submitted a request for review of the deputy commissioner's opinion to the Commission, asserting that the deputy commissioner erred in finding Ayers was entitled to continuing temporary total disability benefits beginning on January 6, 2022.[2] In their written statement on review, appellants challenged the deputy commissioner's finding that the record contained sufficient evidence to show Ayers was totally disabled beginning on January 6, 2022. Appellants further asserted that Ayers was not entitled to a continuing award of temporary total disability benefits because "the records . . . used to substantiate the period of disability contain gaps." Appellants emphasized that while Dr. Kerner had indicated on Ayers's FMLA questionnaire that Ayers would be out of work until May 11, 2022, the medical records did not show that Dr. Kerner saw Ayers again until May 17. Similarly, Dr. Kerner later wrote a note excusing Ayers from work until June 28, but the record did not show that Dr. Kerner saw Ayers again until July 6. For those reasons, appellants contended that Ayers "failed to provide support for those periods of disability."

On review, the Commission affirmed the deputy commissioner's decision. The Commission emphasized that the record contained "no conflicting medical opinion regarding [Ayers's] disability status as of January 6, 2022" because "[t]he expert opinion of Dr. Kerner is the sole opinion . . . addressing [Ayers's] work status as of 2022." The Commission also found that Dr. Kerner's decision to provide Ayers with a note excusing him from work on January 6, 2022,

---

[2] Ayers also requested review of the deputy commissioner's opinion, specifically the finding that appellants were not responsible for his treatment with Dr. Kerner.

was supported by the fact that Ayers was in significant pain at the time and that Dr. Kerner "placed [Ayers] out of work in preparation for his February 21, 2022 surgery." Finally, the Commission rejected appellants' argument that the "very brief periods between disability notes" meant Ayers was not entitled to a continuing award and found that the medical records from Ayers's follow-up appointments were enough to show Ayers had remained totally disabled. The Commission awarded Ayers continuing temporary total disability benefits beginning on January 6, 2022. Appellants appeal the award.

ANALYSIS

I. Sufficiency of the Evidence

"On appeal, the appellant bears 'the "burden of showing" that the Commission committed "reversable error."'" *LKQ Corp. v. Morales*, 78 Va. App. 158, 163 (2023) (quoting *Jones v. Crothall Laundry*, 69 Va. App. 767, 774 (2019)). Decisions of the Commission are "conclusive and binding as to all questions of fact." Code § 65.2-706(A). "Consequently, on appeal, 'we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" *Jeffreys v. Uninsured Employer's Fund*, 297 Va. 82, 87 (2019) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)). Instead, "we are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83-84 (2005) (en banc) (quoting *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222 (1988)). "In addition, '[t]he [C]ommission is authorized to draw reasonable inferences from the evidence, and on appeal, we will not disturb reasonable inferences drawn by the [C]ommission from the facts proven by the evidence

presented.'" *Paramont Coal Co. Va., LLC v. McCoy*, 69 Va. App. 343, 357 (2018) (alterations in original) (quoting *Turf Care, Inc. v. Henson*, 51 Va. App. 318, 324 (2008)).

If there is "no credible evidence to support" the Commission's findings of fact, however, "[t]he question of sufficiency of the evidence then becomes one of law." *Wainwright v. Newport News Shipbuilding & Dry Dock Co.*, 50 Va. App. 421, 432 (2007) (quoting *Morris v. Badger Powhatan/Figgie Int'l, Inc.*, 3 Va. App. 276, 279 (1986)). "[T]he [C]ommission's legal determinations are not binding on appeal and will be reviewed *de novo*." *Roske v. Culbertson Co.*, 62 Va. App. 512, 517 (2013) (quoting *Wainwright*, 50 Va. App. at 430).

On appeal, appellants contend that the evidence was "insufficient as a matter of law" to support the Commission's finding that Ayers was entitled to temporary total disability benefits beginning on January 6, 2022. Specifically, appellants argue that the Commission's finding that Ayers was totally disabled as of that date lacks support in the record and that the Commission unreasonably inferred that "it was necessary for [Ayers] to not do any work in preparation for the surgery." Appellants also assert that the only change between the date Ayers first saw Dr. Kerner and the date Dr. Kerner excused Ayers from any work a month later was Ayers's statement to Dr. Kerner that he felt he could not function at work. According to appellants, the most reasonable inference is that Dr. Kerner excused Ayers from work "as an accommodation to [Ayers's] request."

"A party seeking workers' compensation bears the burden of proving his disability and the periods of that disability." *Jalloh*, 77 Va. App. at 207 (quoting *Vital Link, Inc. v. Hope*, 69 Va. App. 43, 64 (2018)). In order to prove injury by accident, the claimant must demonstrate "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change." *Hoffman v. Carter*, 50 Va. App. 199, 212 (2007). As such,

"whether a claimant is disabled is a question of fact." *LKQ Corp.*, 78 Va. App. at 164.

Accordingly, the Commission's decisions on that question are "conclusive and binding." Code

§ 65.2-706(A).

"The standard in cases involving total disability is whether the injury caused a loss of

earning capacity." *King William Cnty. v. Jones*, 66 Va. App. 531, 541 (2016); *see also*

*Pocahontas Fuel Co. v. Barbour*, 201 Va. 682, 685 (1960) ("A showing that [the claimant] may

not return to his former occupation is not such proof" of a loss of earning capacity.). "The

opinion of the treating physician is entitled to great weight" when determining whether a

claimant has sustained his burden of proving disability, "although the [C]ommission is not

required to accept it." *Vital Link*, 69 Va. App. at 64 (quoting *United Airlines, Inc. v. Hayes*, 58

Va. App. 220, 238 (2011)). "If there is any doubt in the treating physician's opinion, or if there

is contrary expert medical opinion, 'the [C]ommission is free to adopt that which is most

consistent with reason and justice.'" *United Airlines, Inc. v. Sabol*, 47 Va. App. 495, 501-02

(2006) (quoting *Williams v. Fuqua*, 199 Va. 709, 714 (1958)). "[T]he Commission [is] entitled

to infer the severity of disability based on the entirety of the evidence." *Paramont*, 69 Va. App.

at 361.

Credible evidence in the record supports the Commission's finding that Ayers was

entitled to continuing temporary total disability benefits beginning on January 6, 2022. Ayers

testified that he attempted to work after Dr. Baddar released him to full duty, but "couldn't do

it." After returning to work, Ayers continued to experience neck pain, decreased range of motion

in his neck, and numbness extending down his arm into his hand. In addition, Ayers reported a

new symptom; his fingers began "lock[ing] up" and he lost control over his right hand, causing

him to frequently drop objects. Dr. Kerner examined Ayers, reviewed his MRI and EMG results,

and noted Ayers's medical history of ongoing "disabling" symptoms, including his "disability

- 9 -

with dropping things." Dr. Kerner excused Ayers from work after Ayers reported "significant pain" and inability to "function at work."

In *Vital Link*, the claimant presented a note from his doctor stating that claimant was scheduled for surgery in a few months and would be absent from work until the surgery took place as evidence of continuing disability. *Vital Link*, 69 Va. App. at 65. This Court affirmed the Commission's decision to award the claimant temporary total disability benefits starting from the date of the doctor's letter, noting that the decision was supported by evidence in the record of the claimant's "ongoing symptoms" and "conservative treatment that had been provided without granting relief." *Id.* Similarly, Dr. Kerner's note stating Ayers would be out of work pending scheduled surgery, combined with Ayers's testimony and evidence in the medical records regarding Ayers's ongoing symptoms and the "conservative measures" that failed to provide him relief, constituted credible evidence in the record supporting the Commission's judgment. Furthermore, as the Commission observed, Dr. Kerner's expert opinion is "the sole opinion" addressing Ayers's condition in 2022. Accordingly, we will not disturb the Commission's factual finding that Ayers was totally disabled beginning on January 6, 2022.

## II. Waived Argument

Appellants further assert that the Commission erred in finding Ayers was entitled to continuing temporary total disability benefits because Ayers "did not present any evidence to the Commission that he was disabled after August 30, 2022." Emphasizing that "[t]he last note from Dr. Kerner states that [Ayers] would not be returning to work until August 30, 2022," appellants argue that the record lacks evidence showing Ayers remains disabled after that date. Appellants, however, did not preserve their argument for appellate review.

"No ruling of . . . the Virginia Workers' Compensation Commission will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the

ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The contemporaneous objection rule[] embodied in Rule 5A:18 . . . is based on the principle that a litigant has the responsibility to afford a court the opportunity to consider and correct a perceived error before such error is brought to the appellate court for review." *Williams v. Gloucester Sheriff's Dep't*, 266 Va. 409, 411 (2003). "Specificity and timeliness undergird the contemporaneous[]objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). "If a party fails to timely and specifically object, he waives his argument on appeal." *Id.* Moreover, "sub-arguments [that] go considerably beyond the objections made in the trial court" are not preserved for appeal. *Hamad v. Hamad*, 61 Va. App. 593, 600 (2013).

In their written statement to the full Commission on review, appellants asserted that Ayers failed to meet his burden of proving his disability for specified periods in May, June, and July 2022, where the medical records "used to substantiate the period of disability contain gaps." Appellants did not present their argument challenging the period after August 30, 2022, to the Commission, however. Thus, because the Commission did not have the opportunity to rule on this argument, it is not preserved for appeal.[3] Although there are exceptions to Rule 5A:18, appellants do not invoke them, and we will not do so sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

---

[3] Moreover, the deputy commissioner heard evidence and issued her initial decision *before* the date Dr. Kerner's note indicated Ayers was due to return for his follow-up appointment. Under Rule 1.6(D) of the Virginia Workers' Compensation Commission, upon a party's request for the Commission's review of a decision on a claim, "[o]nly information contained in the file at the time of the original decision . . . will be considered" and "[a]dditional evidence will not be accepted." Therefore, if Ayers had any medical documentation or other evidence as to the extent of his disability after August 30, 2022, he had no opportunity to submit any such evidence into the record because the record had closed by that date under the rules of the Commission.

## CONCLUSION

For the foregoing reasons, the Commission's judgment is affirmed.

*Affirmed.*